UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 03 C 7032 |
| | ) | |
| JAMES BATTISTA, | ) | Judge Rebecca R. Pallmeyer |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On March 1, 2000, a jury convicted James Battista and two co-defendants of mail fraud. This court sentenced Battista to 27 months imprisonment, followed by 310 months of supervised release, and ordered him to pay $163,000 in restitution. The Seventh Circuit upheld the conviction and sentence. *United States v. Lanas*, 324 F.3d 894 (7th Cir. 2003). On October 3, 2003, Petitioner filed a *pro se* petition for habeas relief pursuant to 28 U.S.C. § 2255, claiming ineffective assistance of counsel on three grounds. For the following reasons, all three grounds are without merit and Battista's § 2255 petition is dismissed.

## BACKGROUND

The mail fraud charges stemmed from an illegal scheme outlined in the indictment whereby Battista's co-defendant, Richard Hendershot, received kickbacks from six private investigation and security firms doing business with Hendershot's employer, Alexis Risk Management, Inc., a third-party claims administrator. Hendershot was a claims adjustor who handled workers' compensation claims made by employees of Alexis' clients. The indictment alleged that Hendershot used his position to solicit kickbacks from firms hired on behalf of Alexis to conduct surveillance on claimants. Battista, an associate of Hendershot, acted as the "bagman" in collecting the kickbacks

from several of those firms and kept a portion of the illegal proceeds for himself. Hendershot also solicited kickbacks from lawyers at Stevenson, Rusin, & Friedman ("the Rusin law firm"), a firm whose services Hendershot solicited to represent Alexis before the Illinois Industrial Commission, which adjudicates workers' compensation claims.

Count 1 of the three-count indictment described the scheme above, specifically referring to the Rusin law firm and the six private investigation and security firms: John Herley and Associates, Thomas Herley and Associates, Professional Protection Services ("PPS"), Megco, Inc. ("Megco"), Three Star Detective and Security Agency ("Three Star"), and Park Investigations and Detective Agency ("Park Investigations"). Count 1 also referred to Battista's role as the "bagman" for Hendershot in collecting the kickbacks from PPS, Megco, Three Star, and Park Investigations. Counts 2 and 3 incorporated by reference the scheme described in Count 1. Regarding the specific charges, Counts 1 and 2 charged Hendershot alone with the mailing of two Alexis checks to Thomas Herley and Associates in furthering the kickback scheme. Count 3 charged all three defendants, including Battista, with a separate mailing of an Alexis check to Park Investigations. *Lanas*, 324 F.3d at 898.

## DISCUSSION

In support of his § 2255 petition, Battista makes three claims of ineffective assistance of counsel: (1) trial counsel failed to lodge a Rule 403 objection to the amount of evidence relating to what Battista asserts were "uncharged acts"; (2) appellate counsel failed to challenge an alleged *Brady* violation resulting from the government's withholding of evidence and presenting perjured testimony; and (3) trial counsel failed to object to the restitution obligations imposed as part of Battista's sentence.

I. **Legal Standard**

A district court must grant a § 2255 motion to vacate, set aside or correct a sentence when the petitioner establishes "that the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." *Hays v. United States*, 397 F.3d 564, 566-67 (7th Cir. 2005) (citations and quotations omitted). The procedural default rule bars collateral review of claims not raised on direct appeal, unless the petitioner can demonstrate cause for the procedural default and actual prejudice from the failure to appeal, *see Fuller v. United States*, 398 F.3d 644, 648 (7th Cir. 2005), or that the procedural default resulted in a "fundamental miscarriage of justice." *Gomez v. Jaimet*, 350 F.3d 673, 679 (7th Cir. 2003). In *Massaro v. United States*, 538 U.S. 500 (2003), however, the Supreme Court determined that "ineffective-assistance claims should not be subject to 'the usual procedural default rule,' and held that 'an ineffective assistance-of-counsel claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal.'" *Fuller*, 398 F.3d at 648 (quoting *Massaro*, 538 U.S. at 504).

In order to establish constitutionally ineffective assistance of counsel, the habeas petitioner must show: (1) that counsel's representation fell below an objective standard of reasonableness ("performance prong"); and (2) that there exists a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different ("prejudice prong"). *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The court strongly presumes that counsel's performance was effective. *United States v. Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). A court need not address both prongs of the *Strickland* test if one provides the answer; that is, if a court determines that the alleged deficiency did not prejudice the defendant, the court need not consider the first prong. *United*

States v. Fudge, 325 F.3d 910, 924 (7th Cir. 2003) (citing Matheney v. Anderson, 253 F.3d 1025, 1042 (7th Cir. 2001)). The court considers Petitioner's three ineffective assistance claims in light of these standards.

II. The Rule 403 Objection

Battista first claims that his trial counsel was ineffective for failing to object to what he deems unnecessarily cumulative and prejudicial evidence, specifically, evidence of the "uncharged acts" relating to the Rusin and Levine (i.e., the PPS and Megco) incidents.[1] (Defendant's Motion Under 28 U.S.C. § 2255, at 5, hereinafter, "Def. Pet.") On this petition, Battista notes he "does not argue whether the Levine and Rusin acts were admissible for the purpose they were admitted" but rather "that the testimony and documentary evidence of both incidents should have been limited" because he was not charged with either scheme. (Def. Pet., at 11.) Battista claims that his counsel should have objected under Federal Rule of Evidence 403 to the "massive amount" of prejudicial evidence relating to those incidents. (Def. Pet., at 5.)

Under Rule 403, "'[r]elevant evidence is not inadmissible . . . unless its probative value is *substantially* outweighed by the danger of *unfair* prejudice. The fact that evidence is prejudicial or damaging to the defendant does not of itself classify the evidence as inadmissible.'" *United States v. Montoya*, 891 F.2d 1273, 1285 (7th Cir. 1989) (quoting *United States v. Medina*, 755 F.2d 1269, 1274 (7th Cir. 1985) (emphasis in original); see FED. R. EVID. 403. In fact, "relevant evidence is inherently prejudicial." *Montoya*, 891 F.2d at 1285 (citation omitted); see also *United States v. Neeley*, 189 F.3d

---

[1] Battista refers to the episodes involving Levine in several ways—"Levine scheme," "Levine act," "Levine incident." Michael Levine was the owner of PPS and Megco, meaning that references to the "Levine scheme," or any other derivation thereof, are synonymous with the incidents involving PPS and Megco.

4

670, 682 (7th Cir. 1999) ("our decisions have emphasized that most relevant evidence is, by its very nature, prejudicial, and that evidence must be unfairly prejudicial to be excluded").

Battista contends that trial counsel should have objected to the testimony concerning the kickback episodes involving Levine and the Rusin law firm. Battista's petition notes that sixteen witnesses testified concerning those incidents, including three FBI agents and Michael Levine, the owner of PPS and Megco. (Def. Pet., at 8.) By Battista's count, the transcript for this testimony amounted to 567 pages and took approximately six days. (Def. Pet., at 8.) Regarding the Rusin law firm incident, again by Battista's count, five witnesses testified, including Michael Rusin, adding up to 259 pages of testimony and taking an additional two days at trial. (Def. Pet., at 8.) Battista contrasts these figures with the testimonial evidence of the "charged acts" of Park Investigations. For those acts Battista counts just eight witnesses, including two FBI agents, amounting to 280 pages of testimony and lasting less than one and a half days out of a ten-day trial. (Def. Pet., at 8-9.) Battista also calculates that documents relating to the Levine schemes accounted for forty-four percent of all exhibits introduced at trial. (Def. Pet., at 10.)

On direct appeal, Battista challenged the evidence relating to Levine incidents and the Rusin law firm under Rule 404(b). The Seventh Circuit observed, however, that "the indictment in this case set forth one overarching scheme to defraud," and concluded that "[t]he evidence relating to the Rusin law firm, PPS, and Megco was not Rule 404(b) evidence at all but was properly admitted as proof of that overall scheme." *Lanas*, 324 F.3d at 901. Battista correctly notes that the Rule 403 and Rule 404(b) analyses are distinct, and that a ruling on a Rule 404(b) violation does not preclude a subsequent Rule 403 argument. *See United States v. Whitlow*, 381 F.3d 679, 686 (7th Cir. 2004)

("[E]ven if evidence is admissible pursuant to Rule 404(b), courts are still constrained by Rule 403 . . .").

Battista cites *United States v. Forcelle*, which he argues demonstrates that the court may use objective criteria, such as the number of pages in the transcript dealing with certain evidence, in determining whether such evidence is more prejudicial than probative. 86 F.3d 838 (8th Cir. 1996). *Forcelle* does not support Battista's argument here, however. In that case, where the defendant was charged with embezzling funds from his employer, the trial court admitted evidence that defendant had stolen aluminum scrap from his employer, as well. The Eighth Circuit reversed defendant's conviction because the aluminum scrap evidence was admissible neither as *res gestae* evidence nor under Rule 404(b). *Forcelle*, 86 F.3d at 842-43. When considering whether the error was harmless, the court considered, *inter alia*, the amount of testimony in the transcript devoted to the uncharged criminal acts, ultimately concluding that the evidence may have adversely influenced the jury's verdict. The court did compare the number of pages from the transcript that dealt with the uncharged act against the number that dealt with the charges, 86 F.3d at 843, but this analysis related to Rule 404(b), not to Rule 403. Here, where the Court of Appeals has concluded that the Levine and Rusin evidence was not 404(b) evidence at all, Battista's application of *Forcelle* is unconvincing.

More importantly, Battista's data is misleading. Battista fails to mention that of the sixteen witnesses he lists as relating to Levine, eight were called by the defendants, including seven called directly by Battista.[2] Of the five witnesses Battista lists in attempting to demonstrate the prejudicial

---

[2] Battista names sixteen witnesses testifying on the PPS and Megco schemes: Ernest (continued...)

nature of the evidence presented on the Rusin law firm incident, three were called by the defendants, including one called directly by Battista.[3] Battista cannot now claim that those witnesses were unnecessarily cumulative and prejudicial when approximately half were called either by him or his co-defendant.

In any event, the court could exclude the Levine and Rusin evidence only if the prejudice flowing from that evidence clearly outweighed its probative value. Battista identifies nothing about that evidence that is inflammatory, emotionally charged, or disturbing. From the court's prospective, nothing about this evidence is prejudicial other than the fact that it was persuasive evidence of his guilt; the probative value clearly outweighs any purported prejudice suffered by Battista. Thus, trial counsel was not ineffective for failing to object to this evidence.

III. Alleged *Brady* Violation

Battista next claims that his appellate counsel was ineffective for failing to raise a purported violation of the disclosure obligations recognized in *Brady v. Maryland*, 373 U.S. 83 (1963). Battista contends that the government withheld evidence uncovered during the trial that would have impeached a key witness for the prosecution, attorney Michael Rusin. Because the government commented on Rusin's testimony during closing arguments, Battista further asserts that the government was complicit in the alleged perjury.

---

[2](...continued)
Marinelli, Mike Levine, Joe Presto, Mark Coleman, Joe Bruno, Brian Sullivan, Phylis McKee, Joane Jenkins, Michael Caroucci, Tony Aiello, Brian Roe, Peter Caruso, Joe Tolomeo, and three FBI agents (Fee, Lahr, Kouba). The seven called by Battista were McKee, Jenkins, Caroucci, Aiello, Roe, Caruso, Tolomeo. Sullivan was called and questioned by Hendershot.

[3] Battista lists Mike Rusin, Jean Calcagno, Ray Asher, Dennis DaPrato, and Barry Ketter. Battista called DaPrato and Hendershot called Asher and Ketter.

7

Michael Rusin testified on direct examination that Hendershot and Battista offered his firm legal work involving Alexis' clients in return for kickbacks. Rusin's firm had previously been retained by certain Alexis clients, but Rusin testified that after he rejected the kickback scheme, the law firm did not receive any new business from Alexis. On cross-examination, Rusin "was more equivocal," acknowledging that his firm actually did receive new work from Alexis clients after the kickback solicitation meeting but that the new work came from pre-existing Alexis clients. *Lanas*, 324 F.3d at 902. In response to whether his firm had received business from new Alexis clients, Rusin acknowledged, "I can't honestly say," but he insisted, "I know I didn't receive any more files from Mr. Hendershot." *Id.* Rusin further stated that the billing records for the firm's dealings with Alexis clients were unavailable. *Id.*

After the trial concluded, "the defendants learned that the billing records were in fact available and showed that the Rusin law firm did receive new Alexis billings after Rusin turned down the kickback offer." *Id.* On the basis of this newly discovered evidence, the defendants moved for a new trial. *Id.* This court denied that motion, and the Seventh Circuit affirmed that decision on several grounds. First, the court characterized Rusin's testimony as "sufficiently equivocal" to avoid a finding of perjury; second, the court concluded that even if evidence impeaching Rusin's credibility had been presented at trial, the jury was unlikely to have reached a different verdict; and third, the court observed that the defendants were unable to claim surprise because they failed to seek judicial enforcement of a subpoena calling for the Rusin law firm's billing records before trial. *Id.* at 903.

Battista now claims that his appellate counsel was ineffective for not raising this same issue as a *Brady* violation. *Brady* requires the prosecution to produce any material evidence favorable to the defendant. *Brady*, 373 U.S. at 87. "'Evidence is material [under *Brady*] only if there exists a

8

'reasonable probability' that its disclosure to the defense would have changed the result of the trial.'" *United States v. Irorere*, 228 F.3d 816, 829 (7th Cir. 2000) (quoting *United States v. Silva*, 71 F.3d 667, 670 (7th Cir. 1995)). The government's disclosure obligation applies even without any request by defense counsel, *Strickler v. Greene*, 527 U.S. 263, 280 (1999) (citing *United States v. Agurs*, 427 U.S. 97, 107 (1976)), requires production of "impeachment evidence as well as exculpatory evidence," *Strickler*, 527 U.S. at 280 (citing *United States v. Bagley*, 473 U.S. 667, 676 (1985), and extends to evidence "known only to police investigators and not to the prosecutor.'" *Strickler*, 527 U.S. at 280-81 (quoting *Kyles v. Whitley*, 514 U.S. 419, 438 (1995)); *but see United States v. Young*, 20 F.3d 758, 764 (7th Cir. 1994) ("As a general rule, the prosecution's obligation in a criminal proceeding to disclose information is limited to information known to the prosecution.")

Battista has failed to demonstrate that prosecutors or federal agents did in fact possess the information at issue here. On February 22, 2000, Ray Asher, a witness called by co-defendant Hendershot, testified that he had received in the mail a copy of the transcript of Rusin's trial testimony from the previous week.[4] Because the transcript had not been released to other witnesses, the United States Attorney's office began an investigation into how Asher had received the transcript. As part of the investigation, the FBI interviewed Paul Coghlan,[5] a former employee at Rusin's law firm, in person on February 25, 2000 and over the telephone on March 1, 2000. According to Battista, the FBI's interviews with Coghlan revealed that "Rusin lied on the stand, and the U.S. Attorney knew or should have known that Rusin lied and under *Brady* should have advised

---

[4] Michael Rusin completed his testimony on February 16, 2000.

[5] The FBI transcripts refer to Paul A. Coghlan. Battista's petition refers to Paul Coghlan.

9

Battista that they had evidence impeaching Rusin's testimony." (Def. Pet., at 19.) During his telephone interview, Coghlan told the FBI that he "found parts of Rusin's testimony to be inconsistent with his recollection from his time with the firm," specifically regarding whether certain client records were computerized during the relevant time. (Def. Pet., at encl. 5.) Although Battista asserts that the FBI obtained this information on February 28, 2000, the transcript he cites shows that the interview at issue took place two days later, on March 1, 2000, the day the jury returned its verdict.[6] There is no evidence that an earlier interview on February 25 revealed any solid impeaching evidence. (Def. Pet., at encl. 6.) The record, therefore, simply does not support Battista's statement that "[d]uring this investigation, and *prior to the conclusion of Battista's trial*, evidence to impeach Rusin's testimony . . . in a suspicious light was uncovered by the FBI agents during the investigation." (Def. Pet., at 19 (emphasis supplied).)

Even if the prosecution had uncovered this information earlier, the court concludes the disclosure was not material and would not have altered the outcome of the trial. Under the rubric of newly discovered evidence, the Seventh Circuit determined that this same evidence—i.e., access to the Rusin law firm records and the impeachment value to Rusin's testimony—would not have altered the outcome of the trial. *Lanas*, 324 F.3d at 903. This court similarly sees no reasonable probability that the result would have been different if the defense had had knowledge of Rusin's billing records and a potentially impeaching witness. Battista's appellate counsel was not ineffective for failing to argue a *Brady* violation. In fact, Battista's counsel did raise the issue of newly discovered evidence, which was the more appropriate objection to the evidence.

---

[6] Calendar year 2000 was a leap year.

Battista's suggestion that the government knowingly used perjured testimony bears little discussion. The Seventh Circuit upheld this district court's determination that Rusin had not committed perjury despite newly discovered evidence relating to the billing records and the loss of business. *Lanas*, 324 F.3d at 903. Absent a finding of perjury, Battista's challenge on this ground fails.

IV.  Restitution

Finally, Battista urges that his trial counsel was ineffective in failing to object to the restitution order of the district court. This claim pertains solely to the restitution component of Battista's sentence, and challenges to an order of restitution are not cognizable in a § 2255 motion. *Barnickel v. United States*, 113 F.3d 704, 706 (7th Cir. 1997) ("We hold . . . that § 2255 is not available to challenge an order of restitution imposed as part of a criminal sentence.") In any event, as reflected in the court's analysis of Battista's sentencing objections, his lawyer vigorously litigated this issue. *See United States v. Hendershot*, 150 F. Supp. 2d 965 (N.D. Ill. 2001).

## CONCLUSION

For the foregoing reasons, the court denies in its entirety Battista's petition for relief under 28 U.S.C. § 2255.

ENTER:

Dated: November 29, 2005

REBECCA R. PALLMEYER
United States District Judge

11